[Civ. No. 11736. Fourth Dist., Div. Two. July 28, 1972.]

LUIS R. CADILLA, Plaintiff and Respondent, v.
BOARD OF MEDICAL EXAMINERS, Defendant and Appellant.

962

## Counsel

Evelle J. Younger, Attorney General, and John M. Huntington, Deputy Attorney General, for Defendant and Appellant.

Robert L. Wyckoff for Plaintiff and Respondent.

## Opinion

**TAMURA, J.**—This is an appeal by the Board of Medical Examiners of the State of California (Board) from a judgment ordering issuance of a peremptory writ of mandate commanding the Board to vacate its order revoking respondent's physician's and surgeon's certificate.

Respondent was licensed to practice medicine and surgery in the State of California in 1961. After practicing in the Canal Zone from 1963 to 1968, he returned to the continental United States and commenced his

residency in pediatrics at the Loma Linda Hospital. On February 20, 1969, he entered a plea of nolo contendere in the municipal court to a charge of a violation of Penal Code, section 647a (child molest), and was placed on three years probation, subject to certain terms and conditions. The Board thereafter filed an accusation against respondent alleging his conviction of a crime involving moral turpitude (Pen. Code, § 647a), together with facts concerning the circumstances surrounding the commission of the offense, and charged him with unprofessional conduct within the meaning of Business and Professions Code, section 2383.[1] Respondent filed a notice of defense and requested a hearing. Following a hearing before a hearing officer of the State Office of Administrative Procedure, the hearing officer rendered a proposed decision in which he found that the lewd conduct for which respondent was convicted was committed upon an 11-year-old female patient and made specific findings concerning the circumstances surrounding the commission of the crime.[2] He also made findings respecting the psychological therapy respondent had been undergoing since his conviction.[3] Based upon his findings, the hearing officer concluded that respondent was guilty of unprofessional conduct as defined in Business and Professions Code section 2383, and recommended revoca-

---

[1]A conviction of a misdemeanor or felony involving moral turpitude constitutes "unprofessional conduct" within the meaning of the chapter on medicine of the Business and Professions Code and a conviction following a plea of nolo contendere is deemed to be a conviction. (Bus. & Prof. Code, § 2383.)

[2]The referee made the following findings respecting the circumstances of the offense: "The improper, sexually motivated acts occurred on or about November 21, 1968, when respondent was on duty as a Doctor of Pediatrics in the Loma Linda Hospital. He took a well-developed, epileptic, eleven-year-old female from her room at the hospital into an office where he closed and locked the door. He turned off the lights in said room and lowered the victims [sic] pajama bottoms and underwear and fondled her vagina with his hand and finger. He placed his penis against her buttocks and against her pubic area and attempted to insert his penis into her vagina. Respondent also kissed said female on her chest and in the pubic area. Following said incident, respondent returned the female to her room and asked her not to relate the incident to her mother. As a result of said episode the victim has suffered a traumatic reaction, the extent of which could not be determined."

[3]The referee's findings respecting the treatment respondent had been undergoing were as follows: "Respondent is an out-patient of one Dr. O'Neil of the Patton State Hospital. This physician specializes in sex offenders and the criminally insane. He has diagnosed the respondent as a typical child molester who is inhibited and who is afraid to approach sex on an adult level and as one who is unable to truly express his hostility. He is of the opinion that respondent's chances of repeating said sexual misconduct have substantially decreased. He also gives psychological counselling to respondent's wife and believes that, at the present rate of progress, respondent shaould [sic] not be discharged from his counselling for one year at the very least. Dr. O'Neil believes that, since counselling commenced sometime in November or December, 1968, respondent and his wife (who was also quite inhibited) are both presently well motivated and that respondent's sexual and emotional marital needs are now more fulfilling to respondent."

tion of respondent's license stating: "While respondent appears to have made progress in his rehabilitation processes, it was not established that, at the present time, respondent is presently rehabilitated. In view of the serious nature of the offense, particularly with respect to the field of his specialization, it is in the best public interest that his physician's and surgeon's certificate be revoked." The Board adopted the hearing officer's proposed decision.

Upon the Board's denial of a petition for reconsideration, respondent filed a petition for writ of mandate in the court below pursuant to Code of Civil Procedure, section 1094.5, to review and set aside the Board's decision, alleging in substance that the evidence at the administrative hearing showed that respondent's record on probation has been exemplary; he has been undergoing psychotherapeutic care; the uncontradicted testimony of the treating psychologist was that the cause underlying the conduct which led to respondent's conviction "had been largely corrected"; respondent has practiced pediatrics for more than a year and a half since his conviction without incident; and he no longer poses a risk to his patients or to the public. Based upon those allegations respondent alleged that the Board's decision to revoke his license was not supported by the evidence and constituted an abuse of discretion. The matter was submitted on the Board's answer and the record of the administrative proceedings.

The trial court found that the hearing officer's findings concerning the circumstances surrounding the commission of the offense which led to respondent's conviction were supported by the weight of the evidence and that respondent was guilty of unprofessional conduct as defined in Business and Professions Code, section 2383. However, the court found that the Board abused its discretion in ordering revocation of respondent's certificate. Accordingly, the court entered judgment decreeing that a peremptory writ of mandate issue remanding the matter to the Board with directions to set aside its order revoking respondent's certificate and to reconsider the issue of penalty.

The Board contends that the court below erred in determining that the Board abused its discretion in ordering revocation of respondent's certificate. The Board urges that the issue of penalty was a matter committed to the discretion of the Board and was not a subject on which the trial court was empowered to substitute its own independent judgment and discretion. Respondent counters with the argument that inasmuch as the court found that the Board's "determination of issue" concerning the penalty issue "is not correct," the court must have impliedly found that respondent was rehabilitated and having so found properly concluded that revocation

constituted an abuse of discretion. Respondent is in effect urging that while the choice of the penalty to be imposed may be a matter resting in the sound discretion of the Board, the court was empowered to exercise its independent judgment on the factual issue of rehabilitation and to review the propriety of the penalty in the light of its finding on that issue.

■ Where the decision of a statewide administrative tribunal lacking constitutional authority to exercise judicial functions substantially affects fundamental rights, particularly the right to practice one's profession or trade, courts must exercise their independent judgment in determining whether the administrative findings are supported by the weight of the evidence. (*Bixby* v. *Pierno,* 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242]; *Yakov* v. *Board of Medical Examiners,* 68 Cal.2d 67, 71-72 [64 Cal.Rptr. 785, 435 P.2d 553]; *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20]; *Dare* v. *Bd. of Medical Examiners,* 21 Cal.2d 790, 794-795 [136 P.2d 304].)

■ However, the propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency and its decision may not be disturbed unless there has been a manifest abuse of discretion. (*Nightingale* v. *State Personnel Board,* 7 Cal.3d 507 [102 Cal.Rptr. 758, 498 P.2d 1006] [decided July 12, 1972]; *Harris* v. *Alcoholic Bev. etc. Appeals Bd.,* 62 Cal.2d 589, 594 [43 Cal.Rptr. 633, 400 P.2d 745]; *Martin* v. *Alcoholic Bev. etc. Appeals Bd.,* 52 Cal.2d 287, 291 [341 P.2d 296]; *Blake* v. *State Personnel Board,* 25 Cal.App.3d 541, 553 [102 Cal. Rptr. 50]; *Brown* v. *Gordon,* 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901].) ■ "[I]n reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter; nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh. (See *Macfarlane* v. *Department of Alcoholic Beverage Control, supra* [51 Cal.2d 84] p. 91 [330 P.2d 769].) Such interference, in the light of the foregoing authorities, will only be sanctioned when there is an arbitrary, capricious or patently abusive exercise of discretion." (*Brown* v. *Gordon, supra,* 240 Cal.App.2d 659, 667.) The foregoing principles apply whether the statewide administrative tribunal is one which is constitutionally authorized to exercise judicial functions (*Nightingale* v. *State Personnel Board, supra; Martin* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 52 Cal.2d 287, 291; *Hopper* v. *State Personnel Board,* 204 Cal.App.2d 273, 275 [22 Cal.Rptr. 88]), or one which is not so empowered (*Magit* v. *Board of Medical Examiners,* 57 Cal.2d 74, 87-88 [17 Cal.Rptr. 488, 366 P.2d

816]; *Bonham* v. *McConnell,* 45 Cal.2d 304, 306 [288 P.2d 502]; *Shakin* v. *Board of Medical Examiners,* 254 Cal.App.2d 102, 113 [62 Cal.Rptr. 274, 23 A.L.R.3d 1398] [cert. den. 390 U.S. 410 (19 L.Ed.2d 1272, 88 S.Ct. 1112)]).

We find nothing in *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, which alters the scope of judicial inquiry into the propriety of a penalty imposed by an administrative tribunal. In fact, the Supreme Court as recently as July 12, 1972, in the case of *Nightingale* v. *State Personnel Board, supra,* reiterates the principles herein set forth concerning judicial review of administrative penalties. Where the Legislature vests in the administrative body the power to select the proper penalty to be imposed, its decision may not be set aside unless there has been a clear abuse of discretion. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 62 Cal.2d 589, 593-594; *Martin* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 52 Cal.2d 287, 291.) The policy consideration underlying such allocation of authority is the · expertise of the administrative agency in determining penalty questions. (See *Grannis* v. *Board of Medical Examiners,* 19 Cal.App.3d 551, 563-564 [96 Cal.Rptr. 863].) Nowhere in *Bixby* is that policy questioned either directly or by implication. The Legislature has vested in the Board of Medical Examiners the discretion to determine the suitable penalty to be imposed where cause for discipline is found to exist. (Bus. & Prof. Code, § 2372.)[4] And where a conviction of a crime constitutes unprofessional conduct, the Board is expressly empowered to "inquire into the circumstances surrounding the commission of the crime in order to fix the degree of discipline. . . ." (Bus. & Prof. Code, § 2383.) Section 1094.5 of the Code of Civil Procedure which defines the scope of judicial review of a decision of an administrative tribunal provides that "the judgment shall not limit or control in any way the discretion legally vested" in the administrative agency. (Code Civ. Proc., § 1094.5, subd. (e).) ▮ The choice of sanctions is a discretion legally vested in an administrative agency within the meaning of section 1094.5, subdivision (e), of the Code of Civil Procedure. (See *Martin* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 52 Cal.2d 287, 291.)

▮ In the instant case the court reviewed the record of the administrative proceedings and, presumably in the exercise of its independent

---

[4]Section 2372 of the Business and Professions Code provides: "The board shall discipline the holder of any certificate whose default has been entered or who has been heard by the board and found guilty, by any of the following methods:

"(a) Suspending judgment. (b) Placing him upon probation. (c) Suspending his right to practice for a period not exceeding one year. (d) Revoking his certificate. (e) Taking such other action in relation to disciplining him as the board *in its discretion* may deem proper." (Italics supplied.)

judgment, found that the Board's finding that respondent was guilty of unprofessional conduct in having suffered a conviction of a crime involving moral turpitude and its findings pertaining to the circumstances surrounding the commission of the crime were supported by the weight of the evidence. The court nevertheless determined that "it was an abuse of discretion" to revoke respondent's license. In so doing, the court erroneously substituted its own judgment and discretion for that of the Board with respect to the penalty to be imposed.

One of the tests suggested for determining whether the administrative body acted within the area of its discretion is whether reasonable minds may differ as to the propriety of the penalty imposed. The fact that reasonable minds may differ will fortify the conclusion that there was no abuse of discretion. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 62 Cal.2d 589, 594.) ■ In the instant case considering respondent's field of specialization, the nature of the offense, the circumstances surrounding its commission, we cannot say that the Board's action constituted a manifest abuse of discretion. Even viewing the mitigating evidence in the light most favorable to respondent, the most that can be said in respondent's favor is that reasonable minds might differ as to the propriety of the penalty of revocation.

Respondent seeks to bring the penalty issue within the ambit of the independent judgment rule of *Bixby, supra,* by urging that the trial court must have impliedly found that respondent has been fully rehabilitated and that having so found, it necessarily follows that the penalty of revocation was excessive as a matter of law.

The argument, while ingenious, is unpersuasive. Evidence of respondent's record since his conviction and his progress under the therapy he has been undergoing was introduced, not on the issue of cause for discipline, but in mitigation of any sanction which the Board was empowered to impose. ■ The discretion conferred by law on the Board to decide which of the alternative penalties should be imposed must necessarily include the power to evaluate evidence offered in mitigation. To hold otherwise would permit the court to substitute its judgment for that of the administrative tribunal on a matter which the law has committed to its discretion. ■ Only if it can be said in the light of all the evidence before the Board, including the evidence offered in mitigation, that revocation was manifestly unjustified, may the Board's decision on penalty be disturbed. (See *Blake* v. *State Personnel Board, supra,* 25 Cal.App.3d 541, 553-554.)

It should be noted in passing that revocation does not forever preclude respondent from practicing his profession. A person whose license has

been revoked may apply for reinstatement after the lapse of one year from the date of revocation unless he is then still under sentence for a criminal offense or on probation or parole. (Bus. & Prof. Code, § 2376.5.)[5] Respondent stresses his exemplary record on probation and the progress he has made under the psychotherapeutic treatment he has been undergoing. These are proper matters for the Board's consideration on any petition for reinstatement following completion of respondent's probationary period.

We conclude that the court erred in determining that the Board abused its discretion in ordering revocation of respondent's certificate.

Judgment is reversed.

Gabbert, Acting P. J., and Kaufman, J., concurred.

---

[5]Business and Professions Code, section 2376.5, provides in pertinent part:

"A person, whose certificate has been revoked or suspended for more than one year, may petition the board to reinstate the certificate after a period of not less than one year has elapsed from the date of the revocation or suspension.

"The petition shall state such facts as may be required by the board. The petition shall be accompanied by two or more verified recommendations from physicians and surgeons licensed by the board to which the petition is addressed and by two or more recommendations from citizens each having personal knowledge of the activities of the petitioner since the disciplinary penalty was imposed. The petition shall be heard at the next regular meeting of the board, held not earlier than 30 days after the petition was filed. The hearing may be continued from time to time as the board finds necessary. No petition shall be considered while the petitioner is under sentence for any criminal offense, including any period during which he is on probation or parole.

"In determining whether the disciplinary penalty should be set aside and the terms and conditions, if any, which should be imposed if the disciplinary penalty is set aside, the board may investigate and consider all activities of the petitioner since the disciplinary action was taken against him, the offense for which he was disciplined, his activity during the time his certificate was in good standing, his general reputation for truth, professional ability and good character, and may require the petitioner to pass an oral or written examination, or both, at the option of the board. The affirmative vote of at least seven of the members of the Board of Medical Examiners is necessary to set aside a penalty and to restore a certificate with or without terms, conditions and restrictions. The affirmative vote of at least three of the members of the Board of Osteopathic Examiners is necessary to set aside a penalty and to restore a certificate with or without terms, conditions and restrictions. The board may grant or deny, without a hearing or argument, any petition filed pursuant to this section, where the petitioner has been afforded a hearing upon any petition filed pursuant to this section within a period of two years immediately preceding the filing of such petition."